IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

REGINA BOSTIC,

      Plaintiff,

v.                            CASE NO. 2:09-cv-00819

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## M E M O R A N D U M  O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case is presently pending before the court on Plaintiff's Motion for Judgment on the Pleadings.[1]  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Regina Bostic (hereinafter referred to as "Claimant"), protectively filed an application for SSI on December 20, 2005, alleging disability as of November 15, 2003, due to nerves and a broken left tibia.  (Tr. at 15, 74-76, 114.)  The claim was denied initially and upon reconsideration.  (Tr. at 68-

---

[1]   The court reminds Plaintiff that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions in support of judgment on the pleadings.  Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision."  Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

70, 78-79.)  On February 23, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 67.)  The hearing was held on October 28, 2008, before the Honorable Gordon Griggs.  (Tr. at 423-57.)  By decision dated January 14, 2009, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 15-25.)  The ALJ's decision became the final decision of the Commissioner on June 9, 2009, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-7.)  On July 17, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If

2

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

    In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in

substantial gainful activity since the alleged onset date.  (Tr. at 17.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of left knee arthritis, asthma and tibia fracture residuals.  (Tr. at 17.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations.  (Tr. at 20.)  As a result, Claimant cannot return to her past relevant work.  (Tr. at 23.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as surveillance system monitor and bench worker, which exist in significant numbers in the national economy.  (Tr. at 24.)  On this basis, benefits were denied.  (Tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept
> as  sufficient  to  support  a  particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws  v.  Celebrezze,  368  F.2d  640,  642  (4th  Cir.  1966)).

4

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. at 429.) Claimant completed the ninth grade. (Tr. at 430.) In the past, she worked as a cleaner and as a nursing assistant in a nursing home. (Tr. at 431-32.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes treatment notes and other evidence from Claimant's injury in 2000 of her tibia and placement of interlocking screws in the left leg. (Tr. at 317-37.)

On January 26, 2005, Lisa Tate, M.A. examined Claimant at the request of the State disability determination service. Ms. Tate diagnosed major depressive disorder, recurrent, moderate and anxiety disorder, not otherwise specified on Axis I and made no

Axis II diagnosis.  (Tr. at 160.)

On February 13, 2005, Kip Beard, M.D. examined Claimant at the request of the State disability determination service.  He noted Claimant's history of a fractured left tibia, with surgery  and residual pain in the left knee, ankle, foot and shin.  (Tr. at 162.)  Dr. Beard's impression was left tibia fracture status post open reduction and internal fixation with chronic left lower extremity pain (consider posttraumatic osteoarthrosis of the left knee and ankle) and headaches, probably tension headaches.  (Tr. at 165.)   Dr. Beard's examination revealed some motion loss with tenderness and some mild weakness about the left knee.  Claimant had mild swelling in the left ankle, tenderness and pain, but preserved motion.  There was no sensory loss at baseline.  Claimant had difficulty fully squatting and arising from a squat.  (Tr. at 165-66.)

On February 25, 2005, a State agency medical source completed a Mental Residual Functional Capacity Assessment and found that Claimant was moderately limited in a handful of areas of functioning.  (Tr. at 170-73.)  The same State agency medical source concluded on February 25, 2005, that Claimant had a severe mental impairment and mild restriction in activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation.  (Tr. at 184.)

On February 25, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and concluded that Claimant could perform medium work with no other limitations. (Tr. at 188-95.)

On December 27, 2005, Claimant reported to the emergency room with complaints of a tailbone injury.  (Tr. at 244.)

On January 26, 2006, Claimant reported to the emergency room complaining of leg pain.  (Tr. at 196.)  An x-ray of the tibia and fibula showed no acute fracture, but did show a healed fracture of the proximal fibula and distal tibia with an antramedullary tibial rod in place.  (Tr. at 199.)

The record includes treatment notes from Ultimate Health Services, Inc. dated January 30, 2006, and February 24, 2006.  On January 30, 2006, Claimant complained of headaches and Joseph Justice, D.O. diagnosed essential hypertension (likely cause of headaches) and localized osteoarthritis of the knee.  (Tr. at 340-41.)    On  February  24,  2006,  Jason  Fikes,  PA-C  diagnosed hypertension and left leg pain.  (Tr. at 338.)

The record includes a treatment note from Jack R. Steel, M.D. dated March 2, 2006, related to her knee and leg pain.  Dr. Steel's diagnoses included chondromalacia patella and osteoarthritis (localized).  (Tr. at 200-04.)

On April 28, 2006, Robert A. Martin, M.A. examined Claimant at the request of the State disability determination service.  Mr.

Martin diagnosed dysthymic disorder and anxiety disorder, not
otherwise specified on Axis I and made no Axis II diagnosis.  (Tr.
at 211.)

On May 18, 2006, a State agency medical source completed a
Physical Residual Functional Capacity Assessment and opined that
Claimant could perform medium work, with occasional postural
limitations (except for an inability to climb ladders, ropes and
scaffolds) and a need to avoid concentrated exposure to hazards.
(Tr. at 213-20.)

On May 19, 2006, a State agency medical source completed a
Psychiatric Review Technique form and opined that Claimant's mental
impairments were not severe.  (Tr. at 222-35.)

A pelvic ultrasound on October 5, 2006, showed a small uterine
fibroid, but was otherwise normal.  (Tr. at 240.)  A CT scan of the
abdomen on October 14, 2006, was normal.  (Tr. at 239.)

The record includes treatment notes from Lincoln Primary Care
Center dated January 14, 2004, through October 31, 2006.  Claimant
was treated for hypertension, depression, shortness of breath, and
abdominal pain, among others.  (Tr. at 265-86.)

On January 30, 2007, a State agency medical source completed
a Psychiatric Review Technique form and opined that Claimant's
mental impairments were not severe.  (Tr. at 286-99.)

On February 5, 2007, a State agency medical source completed
a Physical Residual Functional Capacity Assessment and opined that

Claimant could perform medium work, with occasional postural limitations (except for an inability to climb ladders, ropes and scaffolds) and a need to avoid concentrated exposure to extreme cold, vibration and fumes, odors, dusts, gases and poor ventilation. (Tr. at 301-08.)

On February 21, 2007, Claimant reported to the emergency room with complains of general weakness and inability to move her left side. There were no neurological deficits. Claimant reported she had been under a lot of stress lately. (Tr. at 346-50.)

On March 15, 2007, Claimant reported to the emergency room with complaints of chest pain and numbness in the legs and arms. The impression of Naaman Bell, M.D. was anxiety. He prescribed Xanax. (Tr. at 356.)

On August 29, 2007, Claimant reported to the emergency room with complaints of right hip, leg and foot injury and pain. A recent x-ray was normal. (Tr. at 351.) Claimant's diagnosis was right leg pain. She was discharged and instructed to follow up with her primary care provider. (Tr. at 353.)

On October 1, 2007, Claimant reported to the emergency room and was diagnosed with anxiety. (Tr. at 357.)

On October 16, 2007, Claimant underwent a sleep study. Claimant was diagnosed with sleep fragmentation of unclear etiology, primary snoring and position dependent mild nocturnal oxygen desaturations. Claimant had no overt degree of obstructive

sleep apnea.  Claimant was advised to sleep on her side and elevate the head of her bed.  (Tr. at 377-78.)

Nerve conduction studies on October 12, 2007, were normal. (Tr. at 379.)

The record includes additional treatment notes and other evidence from Lincoln Primary Care Center dated April 16, 2004, October 18, 2006, February 28, 2007, April 24, 2007, June 12, 2007, August 28, 2007, September 4, 2007, November 6, 2007, January 28, 2008, February 26, 2008, April 30, 2008, June 3, 2008, for treatment of headaches, unspecified transient cerebral ischemia, knee and leg pain, hypertension, depressive disorder, lumbago and generalized anxiety disorder.  (Tr. at 380-411.)

The record includes treatment notes from Huntington Behavioral Medicine dated August 4, 2008, and June 9, 2008.  (Tr. at 413-20.)

On September 15, 2008, Jon Bowen, M.D. of Lincoln Primary Care Center wrote that Claimant was currently under his care for low back pain with radiculopathy into her left leg.  Dr. Bowen wrote that this condition "leaves her unable to stand or sit for extended periods, as well as not being able to lift, stoop, or bend.  It is my medical opinion, given her physical limitations that she would not be able to perform or maintain gainful employment."  (Tr. at 422.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not

supported by substantial evidence because (1) the ALJ disregarded the effects of Claimant's severe left knee arthritis, asthma and tibia fracture residuals as well as her nonsevere impairments, including dysthymic disorder, an anxiety related disorder and hypertension; (2) the ALJ erred in considering Claimant's pain; (3) the ALJ failed to consider Claimant's impairments in combination; (4) the ALJ failed to accurately develop the evidence; (5) the ALJ failed in his duty to produce evidence sufficient to rebut the presumption of disability; and (6) the ALJ disregarded the opinion of the treating physician, Dr. Bowen. (Pl.'s Br. at 11-15.)

The Commissioner argues that (1) Claimant did not meet the burden of proving she is disabled; (2) the ALJ's residual functional capacity finding included all limitations credibly established by the medical evidence of record; (3) the ALJ's partial adoption of Dr. Bowen's proposed residual functional capacity assessment is supported by substantial evidence; (4) the ALJ fully considered all of Claimant's severe and nonsevere impairments in determining Claimant's residual functional capacity; (5) the ALJ's credibility assessment is supported by substantial evidence; and (6) the ALJ adequately developed the record. (Def.'s Br. at 9-16.)

Claimant argues that the ALJ disregarded the effects of her severe left knee arthritis, asthma and tibia fracture residuals in addition to her nonsevere impairments, including dysthymic

11

disorder, an anxiety related disorder and hypertension. (Pl.'s Br. at 11, 14-15.)

The court finds that the ALJ adequately considered all of the evidence of record, and, his findings are supported by substantial evidence. In his decision, the ALJ found that Claimant has severe left knee arthritis, asthma and tibia fracture residuals. Contrary to Claimant's assertions, the ALJ did not disregard the effect of these impairments in assessing her residual functional capacity. The ALJ's residual functional capacity finding is very restrictive, given Claimant's age and the objective medical evidence of record. The ALJ determined that Claimant could perform only sedentary work and that she

> is able to stand and/or walk a maximum of 20 minutes at a time, is able to sit a maximum of 30 minutes at a time; must be able to shift between sitting and standing at will, is not able to bend or stoop; can never climb ladders or scaffolds; can only occasionally climb stairs, balance, stoop, kneel, crouch or crawl; should avoid concentrated exposure to extreme cold, vibrating machinery or tools, fumes, odors, dust, gases and poor ventilation; should avoid exposure to hazards such as moving machinery and working at heights; is limited to tasks that can be learned in 30 days or less involving no more than simple work-related decisions with a few work place changes; should have limited interaction with the public; and is able to focus her attention and concentration on individual tasks for 30 minutes at a time before taking a short break or starting a new task.

(Tr. at 20.)  Despite these limitations, the vocational expert identified a significant number of jobs that Claimant could perform.  (Tr. at 451.)

Furthermore, the ALJ's decision fully complied with the

12

requirements of Social Security Ruling ("SSR") 96-8p that

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 362207, *34477 (1996).  Despite finding Claimant's mental impairments and high blood pressure to be not severe, the ALJ's residual functional capacity finding certainly reflects limitations that more than account for these impairments.

Next, Claimant argues that the ALJ erred in his assessment of Claimant's pain and credibility.  Claimant asserts that the ALJ did not take into account, Claimant's limited daily activities or the fact that her anxiety attacks last three to four hours.  Also, Claimant argues that the ALJ did not consider the frequency, duration and intensity of Claimant's pain or anxiety attacks or precipitating factors.  (Pl.'s Br. at 11-12.)

The court finds that the ALJ's pain and credibility findings are consistent with the applicable regulation, case law and SSR and are supported by substantial evidence.  20 C.F.R. § 416.929(b) (2009); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ's decision contains a

thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 20-22.)   The ALJ ultimately determined that Claimant's credibility is only fair, and provides an adequate explanation, supported by substantial evidence of record, as to why he reached this conclusion.   (Tr. at 21.)

Contrary to Claimant's assertions, the ALJ did consider Claimant's daily activities: "The claimant states that she does house cleaning, has difficulty with her personal needs, takes care of her children, does the laundry, does not have a driver's license and does shop.  The claimant reports watching television, dusting, sweeping and visits with others."  (Tr. at 21.)  The ALJ noted the frequency, duration and intensity of Claimant's pain and other subjective complaints:  "[S]he has left leg pain, left knee arthritis, her pain throbs, aches and stabs, she has headaches and dizziness.  The claimant states that she has nervousness, shakes, has had a broken left tibia and has leg swelling and numbness." (Tr. at 20.)  Further, the ALJ acknowledged precipitating factors, including that Claimant's "pain is worse in cold, damp weather and with standing and walking."  (Tr. at 21.)  Regarding Claimant's mental impairments in particular, the ALJ observed that Claimant "has complained of mental symptoms but has no history of treatment."   (Tr. at 21.)   Indeed, Claimant has not received

14

counseling or other ongoing treatment from a mental health professional.

Claimant argues that the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 12-13.) The ALJ's decision complies with the requirements of 20 C.F.R. § 416.923 (2009). The ALJ fully considered Claimant's severe and nonsevere impairments both in his decision and at the administrative decision, and his residual functional capacity finding certainly reflects a consideration of the combined effect of Claimant's impairments.

Claimant asserts that the ALJ failed in his duty to develop the evidence of record. Claimant does not elaborate. (Pl.'s Br. at 13-14.) The record includes multiple consultative examinations done at the request of the State disability determination service. There is no indication that the evidence of record was somehow inadequate or incomplete, such that the ALJ was obligated to further develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) ("This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate."). Besides, it is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. § 416.912(a) (2009). Thus, Claimant is responsible for providing medical

15

evidence to the Commissioner showing that she has an impairment. Id. § 416.912(c).

Finally, Claimant argues that the ALJ improperly disregarded the opinion of Claimant's treating physician, Dr. Bowen. Claimant asserts that Dr. Bowen treated Claimant for over two and a half years and that the ALJ substituted his view of the medical proof for that of Dr. Bowen. (Pl.'s Br. at 15-16.)

The ALJ did not specifically mention Dr. Bowen's opinion expressed in his letter dated September 15, 2008, that Claimant is "unable to stand or sit for extended periods, as well as not being able to lift, stoop, or bend. It is my medical opinion, given her physical limitations that she would not be able to perform or maintain gainful employment." (Tr. at 422.)

The court finds this omission to be harmless error[2] for the

---

[2] Courts have applied a harmless-error analysis in the context of Social Security appeals. One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988). The procedural improprieties alleged by Morris will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.

Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Our Court of Appeals, in a number of unpublished decisions, has taken the same approach. See, e.g., Bishop v. Barnhart, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct 20, 2003); Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001); Spencer v. Chater, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

following reasons.  The ALJ's residual functional capacity finding, as noted above, is supported by substantial evidence and reflects Dr. Bowen's opinions related to Claimant's inability to stand or sit for extended periods, as well as her inability to bend or stoop.  Specifically, the ALJ found that Claimant "is able to stand and/or walk a maximum of 20 minutes at a time, is able to sit a maximum of 30 minutes at a time; must be able to shift between sitting and standing at will, [and] is not able to bend or stoop ...."  (Tr. at 20.)  With these limitations and others, the vocational expert identified a significant number of jobs that Claimant could perform.  (Tr. at 450-51.)

The ALJ did not find that Claimant was precluded from lifting altogether, as Dr. Bowen suggests, and instead significantly limited Claimant by finding that she could perform only sedentary work.  The ALJ should have addressed Dr. Bowen's opinion in more detail, but the ALJ's residual functional capacity is supported by substantial evidence of record.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

17

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: June 30, 2010

Mary E. Stanley
United States Magistrate Judge